CONSOLIDATED SAFETY VALVE Co. *v.* CROSBY STEAM GAGE & VALVE Co.

*(Circuit Court, D. Massachusetts.　October 7, 1890.)*

1. PATENTS FOR INVENTIONS—DAMAGES FOR INFRINGEMENT.
　　Defendants who infringed a patented valve by the manufacture of valves commercially worthless but for the infringed invention, are liable for the profits realized by them, though the form of their valves is different from those manufactured by complainants.

2. SAME.
　　Where the valves manufactured by defendants also infringed another later patent, likewise owned by complainants, no injustice is done defendants in acceding to complainants' claim that all profits realized by defendants during the life of the earlier patent were solely due to the invention covered by that patent, especially in view of the fact that defendants contended that the invention embodied in the

later patent is worthless; and hence, in an action for the infringement of the earlier patent, it is unnecessary for the master to find how much of defendants' profits are due to the later invention.

3. SAME—ESTOPPEL.

    Complainants, after contending for and accepting a finding, in an action for the infringement of the earlier patent, that defendants' profits, arising from the manufacture and sale of valves infringing both patents, were due solely to the earlier invention, cannot be permitted to recover more than nominal damages in an action for the infringement of the later patent alone, brought after the expiration of the earlier one.

In Equity.

*Thomas W. Clarke,* for complainants.

*Joshua H. Millett,* (*Benjamin F. Thurston,* of counsel,) for defendants.

COLT, J.    These cases now come before the court upon exceptions to the master's report.    In No. 1,184, the master finds that the complainants are entitled to recover the sum of $40,344.59 for the profits received by the defendants from the infringement of the Richardson 1866 patent, No. 58,294.    In No. 1,199 the master finds that the defendants had made no more than nominal profits from the infringement of the Richardson 1869 patent, No. 85,963.

The main question raised by the defendants' exceptions relates to the method adopted by the master in estimating the profits allowed in case No. 1,184.    These suits were originally brought in the circuit court, and decrees were entered dismissing the bills.    7 Fed. Rep. 768.    The supreme court upon appeal reversed the decision of the circuit court, and remanded the cases to this court, with directions to enter decrees sustaining the validity of the Richardson patents, decreeing infringement of both patents, and directing an account to be taken of profits as to both patents, and to take such further proceedings as may be proper, and not inconsistent with the opinion of the court.    5 Sup. Ct. Rep. 513.    In judging of the correctness of the method pursued by the master in his estimation of defendants' profits, the construction put upon the Richardson 1866 patent, and the language used in respect thereto as embodied in the opinion of the court, cannot be disregarded.    It was clearly the duty of the master in his findings, as it is also the duty of the court at the present time, to give full force and effect to the opinion of the supreme court.    If the contention of the defendants is sound, that the supreme court, in their interpretation of the Richardson 1866 patent, gave too much prominence to the feature known as the "huddling chamber with a strictured orifice," it is for them, upon appeal, to obtain some modification of that opinion; but, so long as it stands as the opinion of that court, the views therein expressed should be strictly carried out. The position, therefore, taken by the defendants that the complainants are only entitled to nominal damages, because, as they say, the Richardson valve of commerce does not contain the huddling chamber with a strictured orifice, or, in other words, a huddling chamber with an aperture for the exit of the steam into the open air which is of smaller area than the aperture at the ground joint, I cannot regard as sound, in view of the opinion of the supreme court.    That court construed the Richard-

son patents, and it held that defendants' valve was within those patents, and it gave a broad construction to the Richardson 1866 patent. Upon this point I approve and adopt the conclusions reached by the master in the following language, taken from his report, in considering the accounting in No. 1,184, for the period from February 15, 1879, to September 25, 1883:

"I attribute the entire commercial value of the valves manufactured and sold by the defendants to the improvement covered by Richardson's patent of 1866. Richardson's invention, as described and claimed in that patent, revolutionized the art of relieving steam-boilers from steam pressure rapidly approaching the dangerous point. It made effective for that purpose,—rapidly, and with comparatively small loss of steam,—apparatus, described in other patents, which very nearly embodied Richardson's invention but did not actually contain it. The supreme court, in these cases, has defined this invention, and has declared it to be a vital one,—a life-giving principle to structures very nearly approaching, but not quite containing, an embodiment of Richardson's discovery. It was contended before me that none of the complainants' valves of commerce contained this invention of Richardson, but, upon the whole evidence, with specimens of all the different valves, put on the market by the complainants, before me, I find that they all contain Richardson's improvement of 1866. The supreme court has decided in these cases that the defendants' valves contain this invention, and it is under this decision that the accounting in No. 1,184 is before me. Eliminate this invention from the defendants' valves, and they would be commercially worthless. No substitute for this invention has been suggested to me, and I know of none, which the defendants could have used in its place to have made their valves of commercial value. The defendants claim that some of the profits which they have made are due to the peculiar form of their valves, but the form which they used in making their valves was the form in which they clothed the Richardson invention, the life of their valves, and without that life the Crosby form is worthless. The defendants claimed before me that the complainants, in the accounting in 1,184, which relates only to the Richardson patent of 1866, should prove specifically the value of the invention secured to them under that patent as used by the defendants, and that, as it was claimed by complainants (and the supreme court has so decided) that defendants used also Richardson's invention of 1869, the value of the invention secured to the complainants by the 1869 patent must be determined, and not made an element in the recovery to be had under the accounting in 1,184. I have no means of determining the value of that invention as used by the defendants from February 15, 1879, to September 25, 1883, or of stating in dollars and cents how much of the profits of the defendants during that period is due to that invention. The complainants claimed that during that period all the profits of the defendants were due to the Richardson invention of 1866, and, as the Richardson invention of 1869 belonged also to the complainants, and as the complainants and defendants were respectively the same in each case, 1,184 relating to the said invention of 1866, and 1,199 relating to the invention of 1869, and, as the said period from February 15, 1879, to September 25, 1883, was included within the period to be covered by the accounting in each case, no injustice is done the defendants in acceding to the complainants' claim in this regard; and this is especially so in view of the fact that the defendants claimed that the adjustable device as shown in the Richardson patent of 1869 is worthless as such, and that the cost of the Crosby valve is less without the said so-called adjustable ring, and is a better and more useful safety appliance."

This disposes of the principal question raised by the defendants' exceptions to the master's report. As for the objection to the findings of the master respecting expenses to be allowed for certain valves destroyed, which forms the subject-matter of the first exception, I think the master was right in the conclusion he reached. The defendants were not charged on valves which were subsequently destroyed, or, if so, they were not charged upon the new valves which replaced them. See master's note 29, page 44 of master's report. The master properly disallowed the cost of destroyed valves.

The complainants have filed two exceptions to the master's report in No. 1,184,—one relating to cost of patterns allowed to the defendants by the master, and the other to the allowance of uncollectible items, etc., in master's Schedule C. I see no sufficient reason to disturb these findings. If there is error in the allowance of any of the items of Schedule C, the suggestion of error was not made to the master in such form as to give the court the benefit of his judgment thereon.

In No. 1,199, the complainants have filed several exceptions. They except to the finding of the master that he had no means of determining, from the evidence before him, what portion of the defendants' profits were attributable to the use of the Richardson patent of 1869, and they further except to the finding of the master that the defendants have made only nominal profits from the infringement of the 1869 patent, and that the complainants have suffered only nominal damages from said infringement. Down to the expiration of the Richardson 1866 patent, or until September 25, 1883, the complainants contended, in the case brought upon that patent, that all the profits of the defendants were due to that patent, and the master so found. If the 1869 patent contributed more than a nominal value to the defendants' infringing valves during the life of the 1866 patent, it was the duty of the complainants to have shown that fact in the suit upon the 1866 patent, and to have allowed a corresponding reduction in the finding of profits in that suit. After contending for and accepting such a finding, that the complainants were entitled to all the profits of the defendants from their infringement of the 1866 patent by the manufacture and sale of valves containing the Richardson inventions of 1866 and 1869, they cannot be permitted, upon a bill of complaint against the same defendants, to recover more than nominal profits or damages for an infringement of the 1869 patent only.

Upon the question of damages the master finds as follows:

"With regard to these claims for damages, I find, upon an examination of the evidence before me, that, if I allow any substantial portion of them, I must allow them in full as claimed. I say 'substantial portion,' because there are a few dollars that I might, perhaps, allow in No. 1,184, upon special evidence relating to a few items, but beyond a few dollars the claims stand or fall as a whole. I know no justifiable method of scaling them. The evidence in support of these claims comes from Charles A. Moore, the manager of the business of complainants so far as putting valves on the market is concerned, and the evidence against these claims comes from Francis T. Simmons, a salesman of defendants from February, 1878, to May, 1886, and George H. Eager, treasurer of the defendants. The evidence shows that the complainants ac-

quired the Richardson patents February 15, 1879. The defendants were at that time established in the valve business, and sold steam safety valves in competition with whatever valves were in the market. There were persons and firms to whom they sold their productions, and whom they considered their customers. The complainants, in 1879, soon after acquiring the Richardson patents, issued a catalogue giving their prices for safety valves, but quoted their valves in 1879, to some parties at least, at a large discount from their catalogue prices,—in one instance a discount of fifty per cent. The basis of these claims is that the complainants had an established lowest price for their several classes of valves in 1879. I do not think the evidence supports this proposition to the extent that I can find that the prices given in Mr. Moore's tables, and annexed to complainants' charges in damages, are the lowest prices of the complainants in 1879. The complainants went into active competition with all valve producers of every class. Doubtless the defendants were their chief competitors, but I cannot determine, from the evidence, how much of the reduction in prices, which the complainants made from time to time, was due to defendants' competition and how much to other causes. Doubtless both parties were trying to hold the market as against each other and as against all other competitors in the business. Under these circumstances, a general claim, even accompanied by a specification of items, cannot be maintained upon testimony relating to comparatively few instances, as in this case, and especially where some of the instances are subsequently explained in a manner to materially affect their force as evidence bearing upon the question of damages resulting from direct competition."

The complainants have filed no exception to the finding of the master in No. 1,184, that they have suffered no damages in addition to profits. Upon the whole evidence on this question of damages, I think the master was also right in finding that the complainants are entitled to recover in No. 1,199 only nominal damages.

The exceptions in both cases are overruled, and the master's report confirmed. So ordered.